UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANGELA HALE, | |
| Plaintiff, | Case No. 3:19-cv-01024 |
| v. | Magistrate Judge Alistair E. Newbern |
| MURFREESBORO HOUSING AUTHORITY, | |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Angela Hale filed this action alleging that Defendant Murfreesboro Housing Authority (MHA) discriminated against her in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, when it demoted her from her position as manager of the Westbrook Towers apartment building. (Doc. No. 1.) The parties have consented to the undersigned Magistrate Judge conducting all proceedings in this action under 28 U.S.C. § 636(c). (Doc. Nos. 11, 14.) Before the Court is MHA's motion for summary judgment (Doc. No. 31), to which Hale has responded in opposition (Doc. No. 44) and MHA has filed a reply (Doc. No. 48). For the reasons that follow, MHA's motion for summary judgment will be denied.

# I. Background

## A. Factual Background[1]

Hale began working for MHA as a grant writer in October 2013. (Doc. Nos. 45, 49.) In September 2015, she became an administrative assistant to the property manager at Westbrook Towers, a facility operated by MHA for low-income senior citizens. (Doc. Nos. 38, 49.) On December 31, 2016, Hale suffered a stroke and was hospitalized for one week. (Doc. Nos. 34, 35, 37, 45, 49.) MHA's executive director, Thomas Rowe, visited Hale in the hospital, where Hale told him about her condition and that she had been diagnosed with high blood pressure. (Doc. Nos. 36, 37, 45.)

Hale "could not walk, care for herself, work, or essentially do anything [f]or at least a month following her stroke." (Doc. No. 45, PageID# 408, ¶ 6; *see also* Doc. Nos. 34, 49.) On March 2, 2017, Hale's doctor cleared her to return to work but limited her to working four days a week for one month. (Doc. Nos. 35, 45, 49.) Hale's high blood pressure was controlled with medication. (Doc. Nos. 37, 45.)

Rowe promoted Hale to be the property manager of Westbrook Towers in July 2017. (Doc. Nos. 34, 36, 45, 49.) Hale was able to perform and did not request any modification of her property manager duties. (Doc. No. 45.) Rowe testified at his deposition that Hale performed well as property manager and that he did not have any problems with her work. (Doc. No. 36.)

On December 19, 2017, the Cannon Courier newspaper published an article stating that Hale had been convicted of stealing money in 2012 while she was the director of a Cannon County afterschool program and that Hale had been ordered to pay restitution and placed on probation for

---

[1] The facts in this section are drawn from the parties' statements of undisputed material facts and summary judgment exhibits. (Doc. Nos. 33, 34–38, 45, 49; Audio Recording: Meeting Between Angela Hale and Thomas Rowe (on file with the Court).)

five years. (Doc. No. 34.) The article included the fact that Hale worked at Westbrook Towers. (*Id.*) Rowe had known Hale's criminal history since the first week he worked at MHA in December 2013. (Doc. Nos. 36, 49.) After the article was published, Rowe spoke to several Westbrook Towers residents who were "very concerned that there was a property manager on site that ha[d] been accused of stealing" and who "had access to their records." (Doc. No. 36, PageID# 345:14–16.)

Rowe placed Hale on leave for thirty days. (Doc. Nos. 34, 36, 45.) Rowe testified that he and the chair and vice chair of the MHA board thought that "what was going on with the residents at the Towers . . . would quiet[ ] down" while Hale was on leave. (Doc. No. 36, PageID# 342:17–20.) Rowe wrote a memo to the Westbrook Tower residents informing them that Hale had been placed on administrative leave and stating that he "st[ood] behind [Hale,]" felt that she had "corrected any wrong she may have done or was wrongfully accused of doing[,]" and that he had "always found her to be truthful and trustworthy" in her work for MHA. (Doc. No. 34, PageID# 286.)

Nevertheless, Rowe decided to remove Hale from the property manager position. (Doc. Nos. 36, 49.) After her thirty-day leave expired, Rowe met with Hale and told her that she would not be returning to work at Westbrook Towers because the residents were still upset.[2] (Doc. No. 45.) Rowe told Hale that, "[i]f you go back over there, they're gonna eat you alive. You will never see peace. Never." (Audio Recording: Meeting Between A. Hale and T. Rowe at 14:25–14:33 (on file with the Court).) "For your sanity," Rowe said, "I can't see you going back over there. Because they'll make your life miserable." (*Id.* at 15:24–15:36.) "If you go back over there,

---

[2]     It is not clear from the evidence in the summary judgment record what day this meeting took place.

you'll be either dead with a heart attack or stroke in two or three months because they will drive you to it." (*Id.* at 16:00–16:09.) Rowe told Hale that he was willing to offer her a position as a grant writer in a different MHA office and that she would "have six months to work to secure grants that [would] cover [her] salary" while "fill[ing] in at the front desk and . . . in other places that [MHA] need[ed] [her]." (*Id.* at 15:07–15:20.) Hale said that she had "no choice" but to accept the grant writer position because she needed to work. (*Id.* at 15:43.)

MHA paid Hale $4.00 per hour less as a grant writer than it had paid her as property manager. (Doc. No. 36.) Hale also lost oversight authority over approximately four employees. (Doc. Nos. 36, 49.) On June 5, 2018, Hale resigned from the grant writer position. (Doc. Nos. 34, 45.)

### B.  Procedural History

On November 18, 2019, Hale filed a complaint alleging that MHA violated the ADA by demoting her and effectively terminating her employment on the basis of her disability. (Doc. No. 1.) MHA answered Hale's complaint (Doc. No. 9) and the parties engaged in discovery. MHA then filed a motion for summary judgment accompanied by a supporting memorandum of law, a statement of undisputed material facts, and several exhibits. (Doc. Nos. 31–38.) MHA argues that it is entitled to summary judgment because Hale cannot prove that she is disabled within the meaning of the ADA. (Doc. No. 32.) Hale filed a response in opposition to MHA's summary judgment motion, a response to MHA's statement of undisputed material facts, and her own statement of undisputed material facts. (Doc. Nos. 44, 45.) Hale argues that MHA's motion for summary judgment should be denied because she qualifies as disabled under the ADA. (Doc. No. 44.) MHA filed a reply reiterating its arguments that Hale was not disabled and also filed a response to Hale's statement of undisputed material facts. (Doc. Nos. 48, 49.)

## II.    Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

## III.   Analysis

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To succeed on an employment discrimination claim under the ADA, the plaintiff "must show that [s]he (1) has a disability, (2) was qualified for the relevant job, and (3) requested a reasonable accommodation and was denied, or was subject to an adverse employment decision that was made because of h[er] disability." *Chaniott v. DCI Donor Servs., Inc.*, 481 F. Supp. 3d 712, 721 (M.D. Tenn. 2020). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). ADA regulations provide that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).; *see also* 29 C.F.R. § 1630.2(i) (same).

6

"An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). However, the "regarded as" prong does "not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.* § 12102(3)(A), (B).

MHA argues that it is entitled to summary judgment because Hale cannot show that she meets any of the three categories of disability under 42 U.S.C. § 12102(1) based on the record evidence. (Doc. No. 32.) Hale responds that she can satisfy all three categories. (Doc. No. 44.) Because Hale only needs to satisfy one of the three categories to qualify as disabled under the ADA, a genuine dispute of material fact in the record evidence with respect to any category will render summary judgment inappropriate.

MHA argues that "there is no record of substantial impairment" (Doc. No. 32, PageID# 89) because Hale "recovered from her stroke" and "was under no restrictions at the time of the alleged adverse employment action" (Doc. No. 48, PageID# 421–22). MHA relies on *Spence v. Donahoe*, 515 F. App'x 561 (6th Cir. 2013), for the proposition that an impairment "must be 'of a sufficient duration or severity to be considered substantial.'" (Doc. No. 48, PageID# 422 (quoting *Spence*, 515 F. App'x at 570).) But the Sixth Circuit explained in *Spence* that "[t]he ADA Amendments Act of 2008 expressly overruled" the Supreme Court's holding "that temporary physical conditions do not generally constitute substantial impairments[,]" "stating that the Supreme Court incorrectly

7

'interpreted the term "substantially limits" to require a greater degree of limitation than was intended by Congress.'" 515 F. App'x at 569 (quoting ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008)). The Sixth Circuit found that, "because Spence's termination occurred prior to the amendments, the prior version of the ADA applie[d]" to Spence's claims. *Id.* Hale's claims, however, arise out of events in 2016 and 2017 and are therefore governed by the ADA as amended in 2008.

The ADA's implementing regulations, as amended, provide that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(1)(iii). Consequently, "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." *Id.* The regulations similarly provide that "[w]hether an individual has a record of an impairment that substantially limited a major life activity shall be construed broadly to the maximum extent permitted by the ADA and should not demand extensive analysis." *Id.* § 1630.2(k)(2). The regulations also expressly state that "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of" the ADA. *Id.* § 1630.2(j)(1)(ix). Accordingly, courts must consider an individual "to have a record of a disability if the individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." *Id.*; *see also Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 40 (1st Cir. 2018) (holding that "'record of disability' may be satisfied by a showing that the plaintiff had a disability in the past (even though he no longer suffered from that disability when the allegedly discriminatory action took place)").

The Court finds that, under this standard, MHA has not carried its initial burden to show the absence of a genuine question of material fact regarding whether Hale has a record of a physical impairment that substantially limited one or more of her major life activities within the meaning of the ADA. The undisputed record evidence shows that Hale suffered a stroke on December 31, 2016, as a result of high blood pressure and was hospitalized for about a week. (Doc. Nos. 34, 35, 37, 45, 49.) MHA does not dispute that Hale "could not walk, care for herself, work, or essentially do anything [f]or at least a month following her stroke." (Doc. No. 45, PageID# 408, ¶ 6.) Construing the relevant statutory terms broadly, as it must, the Court finds that these undisputed facts are sufficient to create a genuine question of material fact regarding whether Hale has a record of disability and is therefore disabled within the meaning of the ADA.

MHA does not address the other elements of Hale's ADA claim in its motion for summary judgment. (Doc. Nos. 31, 32.) The Court nevertheless concludes that the record contains evidence on which a reasonable juror could find in Hale's favor on each remaining element. First, there is sufficient evidence indicating that Hale was qualified for the property manager position. Hale was promoted to that role after working for MHA for over four years, she performed her responsibilities without apparent incident after recovering from her stroke, and Rowe had recently told the residents that he "st[ood] behind [her]" and trusted her to perform the duties of that position. (Doc. No. 34, PageID# 286); *see Gunter v. Bemis Co.*, 906 F.3d 484, 488 (6th Cir. 2018) ("A 'qualified individual' is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position.'" (quoting 42 U.S.C. § 12111(8))).

A reasonable juror could further find that transferring Hale to the grant writing position, where she received a lower hourly wage and had less supervisory authority, was a demotion constituting an adverse employment action. (Doc. Nos. 36, 49); *see Kocsis v. Multi-Care Mgmt.,*

*Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (finding that "'a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . .'" can constitute an actionable adverse employment action under the ADA (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Finally, the summary judgment record includes evidence that would permit a reasonable juror to find that Hale was demoted because of her record of disability. *See Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (stating that a plaintiff alleging employment discrimination under the ADA must show that the adverse employment decision would not have been made "but for the disability"). It is undisputed that, when Rowe removed Hale as property manager, he told her that "[i]f you go back [to your position as property manager], you'll be either dead with a heart attack or stroke in two or three months because [the residents] will drive you to it." (Audio Recording: Meeting Between A. Hale and T. Rowe at 16:00–16:09.) A juror could reasonably conclude that Rowe's contemporaneous statements to Hale conveyed his actual reasons for transferring her and that he would not have reached his decision but for her history of high blood pressure and a stroke. *See Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 313–14, 319, 323–24 (6th Cir. 2019) (finding that contemporaneous all-staff email stating that management made the "very difficult decision" to terminate an employee because she "ha[d] been having major issues with her eyesight" was sufficient evidence of but-for causation to survive summary judgment on ADA claim).

Accordingly, MHA is not entitled to summary judgment, and Hale's employment discrimination claim under the ADA will proceed to trial.

**IV.     Conclusion**

For the foregoing reasons, MHA's motion for summary judgment (Doc. No. 31) is DENIED.

Entered this 27th day of September, 2021.

ALISTAIR E. NEWBERN
United States Magistrate Judge